IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Brittney Nicole Teague, | ) | C/A No.: 1:10-2767-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

    This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

    A.    Procedural History

    On August 18, 2004, Plaintiff applied for SSI benefits while under 18 years of age. Tr. at 61–64.[1] In an October 26, 2006 decision, the Commissioner granted Plaintiff's

---

[1] Plaintiff's mother, Heidi Teague filed the application on her behalf. *See* Tr. at 64. Claimant is referred to herein as Plaintiff, and her mother is referred to as Mrs. Teague or

application, finding she was disabled as of the filing date based on the SSI regulations applicable to children. Tr. at 40–44. On April 16, 2008, after Plaintiff turned 18, the Commissioner redetermined whether she was entitled to SSI benefits as required by Section 1614(a)(3)(H) of the Act. Tr. at 244; *see* 20 C.F.R. § 416.987 (noting Social Security Administration ("SSA") must use adult SSI rules to redetermine eligibility of child recipient of SSI benefits who was eligible for benefits for the month before attaining age 18). On redetermination, the Commissioner found that Plaintiff's impairments did not meet the definition of disability for adults and terminated her benefits. Tr. at 244. After an October 29, 2008 hearing, a Disability Hearing Officer ("DHO") determined Plaintiff was not disabled because she was capable of performing simple, unskilled work. Tr. 258–63. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which ALJ Arthur L. Conover conducted on May 20, 2009. Tr. at 264–69 (hr'g req.), 520–66 (hr'g tr.). On August 4, 2009, the ALJ issued an unfavorable decision finding Plaintiff's disability ended on April 17, 2008, and that she had not become disabled again since that date.[2] Tr. at 17–27. In a August 23, 2010 letter, the Appeals Council denied Plaintiff's request for review, and Plaintiff brought this action seeking judicial review of the

---

"Plaintiff's mother."

[2] In her reply brief, Plaintiff informed the court that she received a favorable decision awarding her benefits based on a subsequent application. Pl.'s Reply at 1 and Entry #15-1 (copy of Apr. 21, 2011 favorable decision finding Plaintiff was disabled from August 5, 2009 amended onset of disability date through the date of decision). Plaintiff does not argue that the subsequent favorable award impacts this appeal, and the court does not consider it further.

Commissioner's decision in a Complaint filed on October 26, 2010. Tr. at 7–10 (Appeals Council review), Entry #1 (Compl.).

B.      Plaintiff's Background and Medical History

February 21, 2008 was Plaintiff's eighteenth birthday, and she was 19 years old as of the May 20, 2009 hearing. Tr. at 19, 524. She attended high school until the last semester of twelfth grade, but did not graduate. Tr. at 528–29. Although Plaintiff performed some work as a babysitter and a school cafeteria intern, she has no past relevant work ("PRW") for purposes of determining disability. Tr. at 24–26.

The ALJ found Plaintiff had severe mental impairments and no physical impairments. Plaintiff's allegations of error focus on the ALJ's consideration of the hearing testimony of Plaintiff's mother and on whether the ALJ provided sufficient detail regarding Plaintiff's mental residual functional capacity ("RFC"). Accordingly, the court does not provide details of Plaintiff's medical history here,[3] but discusses it below when relevant.

C.      The Administrative Proceeding

Plaintiff, her mother, and a vocational expert ("VE") testified at the May 20, 2009 hearing before the ALJ. Tr. at 520–66.

---

[3] See the parties' briefs for summaries of the medical evidence. Pl.'s Br. at 3–4, Def.'s Br. at 2–5. (Plaintiff's brief contains conflicting page numbers. When citing to her brief, the court refers to the page numbers added by the court's electronic filing system.)

1.  Testimony of Plaintiff

Plaintiff testified that she lived with her mother, father, brother, and sister. Tr. at 525–26. She said she obtained a driver's permit after taking the test three times, and that she did not have a driver's license because she was nervous about taking that portion of the test. Tr. at 527–28. Plaintiff testified that she had been engaged, was not married or dating anyone, and had no children. Tr. at 528. She stated she attended high school through a portion of the twelfth grade, but quit in the last semester because she knew she would not obtain a diploma. Tr. at 528–29. She said she had been in special education classes for all subjects at times, but that sometimes she had been placed in classes that were too fast for her. Tr. at 529. Plaintiff said she had received counseling from vocational rehabilitation, but that she had not obtained any other training. Tr. at 531. She said she was trying to obtain her GED through computerized programs, but that she had become frustrated because she had no one to help her prepare for it. Tr. at 531–32. She said she had done some babysitting for neighbors or people she knew, but had been unsuccessful in finding other jobs. Tr. at 530–31. When asked what her biggest problem in holding a job was, she said it was that she had difficulty learning and remembering things, had difficulty with spelling and math, and had difficulty getting along well with others. Tr. at 532.

Plaintiff said that she had two or three friends with whom she watched television, played games, and occasionally went to movies. Tr. at 532–33. She testified that she continued to receive SSI benefit checks, and that when she was 18 years old, she had SSA begin sending the checks to her only, and she deposited them in her own bank account. Tr.

at 534. She stated that she used the money to pay family bills and to buy things she needed. Tr. at 534–36. Plaintiff said she did not know how to write checks, but used her debit card to pay bills. Tr. at 536–37. She said that her mother helped her balance her account, but that she had been overdrawn on her account before. Tr. at 537–38. She said that, although she had a "good bit of trouble" handling her money, she wanted it in her own account so that she was the only person who could touch the money. Tr. at 539. Plaintiff testified that she stayed in her room to avoid her family's arguments and stress. Tr. at 542. She stated that she took anti-depressant medication every day, and that it helped with her depression without negative side effects. Tr. at 543–44.

When asked to explain her memory problems, Plaintiff said she could not recall what she had done a few days prior, but she said she had never started a task and forgotten why she was doing it. Tr. at 547. Plaintiff said she did household chores such as making her bed, cleaning her room, vacuuming, doing dishes, and preparing meals. *Id.* She said she was able to focus on movies. Tr. at 549. She stated she knew how to use a computer to email friends or get on the internet. Tr. at 551–52.

    2.   Testimony of Plaintiff's Mother

Mrs. Teague confirmed that Plaintiff's SSI benefits went directly to Plaintiff. Tr. at 554. She testified that Plaintiff's condition had not changed much since her last disability hearing, that she continued to be depressed, had poor motivation, was immature, and did not socialize much with her friends. Tr. at 555. She described Plaintiff as behaving more like a nine or ten year old than a nineteen year old, and said she had very little short-term

memory. *Id*. Mrs. Teague said she did not believe Plaintiff could live on her own. Tr. at 557. She indicated Plaintiff used the computer to send emails when her younger sister was with her, and that she occasionally overdrew her bank account. Tr. at 558–59.

### 3. VE Testimony

The ALJ asked VE Mary L. Cornelius a hypothetical question regarding a younger individual with an eleventh-grade education, a second-grade reading level, and a full scale IQ score of 79 (comprised of a verbal score of 75 and performance score of 89). Tr. at 561. The ALJ asked Dr. Cornelius whether such an individual could work if she had the following workplace limitations: perform only simple routine work activity; avoid large crowds; not wait on customers; perform no work involving any cash transactions; and receive instructions orally. Tr. at 561–62. The VE found that such an individual could perform the following jobs, all of which required light exertion and were unskilled: cafeteria attendant; small product assembler; and garment folder. Tr. at 562. When the ALJ also limited the individual to being unable to stay on routine, simple, one-and-two-step tasks consistently, the VE opined there were no jobs the individual could perform. Tr. at 562–63.

## II. Discussion

Plaintiff argues the ALJ erred by (1) failing to perform a full credibility analysis on the testimony of Plaintiff's mother, and (2) failing to include specific function-by-function findings regarding her mental RFC. The Commissioner counters that the ALJ did not commit reversible legal error and that his findings are supported by substantial evidence.

A. ALJ Findings

In his August 4, 2009 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant attained age 18 on February 20, 2008, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. The claimant was notified that she was found no longer disabled as of April 17, 2008, based on a redetermination of disability under the rules for adults who file new applications.

2. Since April 17, 2008, the claimant has had the following severe impairments: borderline intellectual functioning, reading learning disorder, and affective disorder (20 CFR 416.920(c)).

3. Since April 17, 2008, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, I find that since April 17, 2008, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited in performing detailed or complex tasks but is able to carry out short simple tasks as long as she avoids large crowds in the workplace or work requiring cash transactions, and is provided oral instructions.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born February 21, 1990, and is a younger individual age 18–44. (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Since April 17, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant's disability ended on April 17, 2008, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

Tr. at 19–27.

B. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner must use adult SSI disability rules to redetermine eligibility of claimants who were eligible for SSI benefits as children. 20 C.F.R. § 416.987(b).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working;

(2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish impairment is disabling at Step 3).

Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g); § 1383(c)(3) (applying § 405(g) judicial review provisions to SSI matters). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

  C. Analysis

    1. The ALJ Properly Considered the Testimony of Plaintiff's Mother

Plaintiff first argues that the ALJ erred because his decision did not properly evaluate her mother's hearing testimony. Pl.'s Br. at 7–9. The Commissioner disagrees, arguing that the ALJ properly considered and discussed Mrs. Teague's testimony in compliance with applicable rules and regulations and that his decision is based on substantial evidence. Def.'s Br. at 10–11.

Plaintiff argues that the ALJ failed to specifically address and analyze this subjective testimony, in violation of SSR 96-7p's requirement that he consider statements from "other persons" about Plaintiff's symptoms and how they affected her. She also argues that the ALJ did not follow SSR 85-16, claiming that ruling requires an ALJ is to consider testimony of third parties and identify pertinent evidence before making findings regarding a claimant's mental RFC. Pl.'s Br. at 7–9. Noting the absence of controlling precedent regarding the level of consideration SSR 96-7p and SSR 85-16 requires for a family member's subjective testimony, Plaintiff cites out-of-circuit cases for the proposition that the ALJ is required to specifically recount any such testimony it rejects and explain why. Pl.'s Br. at 7–8. She focuses particularly on the ALJ's consideration of Mrs. Teague's testimony that Plaintiff could not maintain her own checking account, that she could not use a computer without assistance, and that she did not perform household chores without assistance. Pl. Br. at 8–9 (citing Tr. at 556–59).

The Commissioner counters, arguing that the ALJ appropriately addressed and discounted Mrs. Teague's testimony. He specifically argues that SSR 85-16 does not require the specific credibility analysis of third-party testimony that Plaintiff seeks. Def.'s Br. at 10, n.4.

The undersigned agrees with the Commissioner and finds that the ALJ discharged his duty to address Mrs. Teague's subjective testimony by describing medical and non-medical evidence relating to her subjective testimony, and his determination is supported by substantial evidence. *See* 20 C.F.R. § 416.929(c); SSR 96-7p, 1996 WL

374186, at *4, *8; *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (noting ALJ should "refer specifically to the evidence informing his conclusion" regarding credibility determinations); *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987) (ALJ must discuss and resolve conflicts in the evidence). Although SSR 85-16 states that "[o]ther evidence also may play a vital role in the determination of the effects of [the mental] impairment," contrary to Plaintiff's argument, it does not mandate any special significance be placed on that evidence. Rather, SSR 85-16 provides that "relevant, reliable information, obtained from third party sources," including family members to be information that "may be valuable in assessing an individual's level of activities of daily living." *See* SSR 85-16, 1985 WL 56855, at *4.

The ALJ referenced specific portions of Mrs. Teague's hearing testimony that Plaintiff's depression "ha[d] increased" since her last hearing; she was seeing a counselor; and that she "does not cope well with stress and stays in her room most of the time, going out with friends only occasionally." Tr. at 21 (citing to hr'g testimony, available at 554–60). As required by the Commissioner's rules and regulations, including SSR 96-7p and SSR 85-16, the ALJ contrasted Mrs. Teague's testimony with reports from treating and examining physicians that found Plaintiff "was not significantly depressed;" had some "situational issues with normal anxiety and depression;" and was effectively treated by anti-depressant medication. Tr. at 21–22 (citing the report of consulting examiner Ron O. Thompson, Ph.D. ex. 6F at 2,4, available at 409, 411).

In addition to finding that objective medical evidence did not support all subjective allegations made by Plaintiff and her mother regarding the extent of her limitations, the ALJ found that factors other than medical limitations contributed to Plaintiff's claimed inability to work. Tr. at 24. For example, the ALJ referenced Dr. Thompson's report, in which he opined that Plaintiff "probably could participate with good pace and persistence were she motivated to do so," and noting Plaintiff's mother reported "borderline characteristics," but that those characteristics were not documented. Tr. at 24–25 (citing ex. 6F, Dr. Thompson's report, available at 406–11).

The ALJ also noted Mrs. Teague's claim that Plaintiff could not handle her own funds, but discounted it by discussing Plaintiff's hearing testimony that she maintained a checking account by herself and that she handled her own funds. Tr. at 25. The ALJ also discounted Mrs. Teague's testimony regarding Plaintiff's ability to manage funds by considering the opinion of Plaintiff's treating physician, Jon C. Kazaglis, M.D., that Plaintiff was responsible, capable of caring for herself, and capable of handling her own funds. Tr. at 25 (citing ex. 2F, p. 2: Dr. Kazaglis's May 16, 2007 opinion, available at 369).

The ALJ then referenced some of Plaintiff's activities of daily living ("ADLs"), noting that Plaintiff occasionally babysat, watched movies, went out with her friends, was previously engaged, and was sexually active. Tr. at 25. Further, the ALJ noted that Plaintiff's own testimony regarding her ADLs—that she engaged in social activities with friends, babysat for friends and relatives without assistance, was working on her GED,

14

could use a computer without assistance, and did various household chores—was supported by Dr. Thompson's report and the findings of state agency physicians. Tr. at 25.

The ALJ appropriately summarized his credibility determination of the testimony of Plaintiff and her mother, stating:

> The described daily activities indicate a fairly active and varied lifestyle and do not represent a significant restriction of activities, constriction of interests, or impaired social function. The subjective allegations of limitations are not supported by the weight of the evidence.

*Id.*

Finally, the court agrees with Plaintiff that some discrepancies exist between Mrs. Teague's testimony and other record evidence. *See* Pl. Br. at 6. However, as detailed above, the ALJ discussed much of Mrs. Teague's testimony, compared it with conflicting testimony, and explained why he discounted her testimony and the reasons for finding Plaintiff was not disabled during the relevant period. Accordingly, he was not required to include a written discussion and evaluation of every statement or each piece of evidence. *See Jackson v. Astrue*, 8:08-2855-JFA, 2010 WL 500449, *10 (D.S.C. Feb. 5, 2010) ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence, but need only minimally articulate his reasoning so as to make a bridge between the evidence and its conclusions.") (internal quotation and citations omitted). The undersigned is of the opinion that the ALJ appropriately considered Mrs. Teague's testimony and explained his evaluation of it, supporting his findings by discussing pertinent portions of the record. The undersigned disagrees with Plaintiff's argument that SSR 85-16 and SSR 96-7p require

more when considering third-party lay testimony. Because the ALJ's decision is supported by substantial evidence and complies with the regulations, rules, and Fourth Circuit case law, the undersigned recommends dismissal of Plaintiff's first allegation of error.

        2.        The ALJ Provided a Sufficiently-Specific Evaluation of Plaintiff's Mental RFC

Plaintiff argues that the ALJ erred by not following SSR 96-8p in considering her mental RFC because he did not set forth a detailed, function-by-function analysis of her ability to perform specific mental functions. Pl. Br. at 7–9. She submits that the ALJ's assessment of her mental RFC at step four of the five-step sequential analysis consisted of no more than finding that she had the RFC to "perform short simple tasks that are provided orally, but she [could] perform no work around large crowds or that involve cash transactions." Pl.'s Br. at 7 (citing Tr. at 20–21). Although the Commissioner agrees that SSR 96-8p provides the correct framework for evaluating a claimant's mental RFC, he submits that the ALJ's fourth-step analysis comported with SSR 96-8p and was sufficiently specific. Def.'s Br. at 11–14.

The undersigned agrees with the Commissioner. SSR 96-8p provides the SSA's policy interpretation regarding assessment of a claimant's RFC at step four of the sequential analysis and provides, in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. . . .

SSR 96-8, no. 5. Specific to claims of mental impairments, the Ruling discusses steps two and three of the sequential analysis and then provides:

> The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF [Psychiatric Review Technique Form].

SSR 96-8p.

Plaintiff argues that SSR 96-8p requires the ALJ to discuss each category found on the PRTF, and claims the ALJ here did not adequately address "domains such as the ability to interact with supervisors and coworkers, the ability to respond appropriately to pressures in a usual work setting, and the ability to respond appropriately to changes in a routine work setting." Pl.'s Br. at 8. Plaintiff concedes that no Fourth Circuit case has considered the issue of how much written detail an ALJ's decision must include in analyzing mental impairments at step four. She further acknowledges that the only published case from this district of which she is aware, *Vo v. Astrue*, 518 F. Supp. 2d 715 (D.S.C. 2007), was remanded with instruction to perform a function-by-function assessment because the matter was already being remanded for other reasons. Plaintiff urges the court to adopt the Fifth Circuit's decision that required each function be explicitly assessed. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). Plaintiff then discusses the decision in *Mellon v. Astrue*, 08-2110-MBS-TER, 2009 WL 2777653 (D.S.C. Aug. 10, 2009), in which the court considered this issue, but ruled that specific, written discussion of each function was not necessary. Plaintiff urges a different result

17

here, arguing that SSR 96-8p expressly requires the ALJ to "address" various functions, arguing the ALJ's findings as to those functions cannot be implicit. Pl.'s Br. at 8–9.

The undersigned agrees with the Commissioner that the ALJ's detailed assessment of Plaintiff's mental RFC complied with SSR 96-8p. Based on the ALJ's thorough discussion, the undersigned does not recommend finding that SSR 96-8p automatically requires the specific, function-by-function analysis Plaintiff seeks.

Here, the ALJ noted Plaintiff's and Mrs. Teague's claims of disabling limitations and listed and discussed objective medical and other evidence relating to Plaintiff's mental limitations, including IQ test results, vocational rehabilitation reports, capabilities assessments, and Plaintiff's treating physicians' assessments. *See* Tr. at 21–22. After providing that detailed summary of Plaintiff's mental impairments, the ALJ provided the following detailed summary paragraph in which he assessed Plaintiff's various mental impairments and listed specific restrictions in the workplace for each:

> In summary, the evidence shows that the claimant has high-borderline to low-average intellectual functioning. Additionally, there is some evidence of a reading disability. The claimant's mother has reported that the claimant used to write in her journal frequently which would imply ability to read and write and it has not been explained why her reading level would have decreased from a previously determined level. Nevertheless, the evidence is reasonable in showing that the claimant would benefit from verbal instructions at the workplace rather than written instructions. Also, because of her decreased intellectual functioning, she is restricted to performance of simple, routine tasks and should not be expected to perform detailed or complicated tasks. The claimant's depression quickly improved with medication as noted by her primary care physician, Dr. Brownlee, and there has been no evidence of recent suicidal attempt or gesture or treatment for self-mutilation. Dr. Kazaglis found that she demonstrated responsibility and was capable and Dr. Thompson indicated that she could maintain sufficient

> pace and persistence at simple, routine tasks. I find that the claimant's mental impairments reasonably restrict her to carrying out short, simple tasks with avoidance of large crowds, no requirement to perform cash transactions, and allowance for verbal instructions at the work site. I find no other restrictions in the claimant's ability to perform basic work-related activities.

Tr. at 22.

The undersigned recommends finding that the ALJ satisfied SSR 96-8p's requirements of a narrative discussion requirement. The court has considered Plaintiff's discussion of, and disagreement with, *Mellon*. In *Mellon*, the court found the ALJ's implicit findings regarding Plaintiff's functional capabilities were sufficient because the ALJ's narrative discussion provided a "logical bridge" between his conclusions regarding the claimant's RFC and the evidence. 2009 WL 2777653 at *17. Here, the ALJ made explicit findings regarding how Plaintiff's mental impairments impacted her mental RFC, making further consideration of *Mellon* unnecessary. Because the ALJ met all of SSR 96-8p's narrative discussion requirements, and because his application of those requirements to the evidence in the administrative record was both reasonable and supported by substantial evidence, the undersigned recommends affirming the ALJ's decision.

III.    Conclusion and Recommendation

Based on the foregoing, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

*[signature: Shiva V. Hodges]*

December 5, 2011                                   Shiva V. Hodges
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**